## RUSSO v. STANDARD OIL CO. OF CALIFORNIA.
### No. 182, Docket 22242.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1952.

Decided April 3, 1952.

Joseph Lieberman, Jacob Rassner and Robert Klonsky, New York City, for libellant-appellant.

Lyeth & Voorhees and Mark W. Maclay, New York City, for respondent-appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

PER CURIAM.

We quote in the margin thirteen of the thirty-four Findings of Fact [1] of the district court, all of which are not only supported by evidence, but by substantially undisputed evidence. There remains only the question whether the master and officers failed to give the libelant proper medical care, which would have prevented him from becoming deaf as a sequela of cerebro-spinal meningitis. It is strange that upon this appeal the libelant should still assert that the ship was required to carry sulfa drugs. The contrary was explicitly proved out of the mouth of his own witness, and was not contradicted by his only other medical witness, Denker. The only other conceivable ground of complaint is that the master should have broken the silence imposed on him by the war regulations in order to have a doctor ready at Eniwetok at the moment the ship arrived. That has almost as little basis as the charge that the ship should have carried sulfa drugs. In the first place the libelant's illness was not severe enough to justify a notice to a harbor which had already been bombed. Moreover, that aside, when the ship did reach Eniwetok at 5:35 P.M. on November 29th, she at once notified the Navy hospital in the harbor, who did not answer until the next day, or take off the libelant until 1 P.M. That delay was not chargeable to the ship; and besides, there is no evidence that the libelant's hearing would have been less damaged, had he been put ashore that night. The claim is utterly devoid of merit.

Decree affirmed.

1. 8. On November 22, 1944, while the SS. R. C. STONER was on the high seas between Pearl Harbor and Eniwetok, the libelant complained that he felt ill.

9. When the libelant complained of being ill he was relieved of duty, placed in the ship's hospital, and was regularly attended by the master, chief officer and the second officer, as well as by the other messmen aboard.

10. From November 22, 1944 through November 27, 1944 the libelant's pulse and temperature were normal.

11. On November 28, 1944 libelant's pulse was normal, his temperature was 100.6°. He was having difficulty in hearing and complained of severe headaches.

12. On November 29, 1944 libelant's temperature was 101.6°; pulse 75. He was having delusions, imagined he was dead.

14. Upon arrival at Eniwetok, the master of the SS. R. C. STONER advised the Naval hospital ashore that he had a sick man on board, and was advised that the libelant would be taken ashore as soon as conditions permitted.

15. On November 30, 1944 libelant was taken ashore and admitted to the Navy hospital.

16. At the Navy hospital at Eniwetok libelant's illness was diagnosed as cerebro-spinal meningitis.

19. The SS. R. C. STONER had no medical officer on board, and was not required by any law or regulation to have a medical officer on board.

20. The SS. R. C. STONER had on board a ship's medicine chest. The medicine chest did not include sulpha drugs, and no law or regulation applicable to this vessel required that sulpha drugs be included.

21. The SS. R. C. STONER carried "The Ship's Medicine Chest and First Aid at Sea" in accordance with regulations applicable to this ship.

28. During all the time from November 13 through November 30, 1944, inclusive, when the SS. R. C. STONER was on the high seas it was proceeding alone under radio silence which, under the Naval regulations then in force, could be broken only in the event of an emergency.

29. Whether an emergency existed sufficient to justify breaking radio silence rested in the discretion of the master.